IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DSCH CAPITAL PARTNERS, LLC d/b/a FAR WEST CAPITAL, | § § § | CV NO. 1:14-CV-348-DAE |
| Plaintiff, | § § | |
| vs. | § § | |
| HYPOWER, INC, | § § | |
| Defendant and Third-Party Plaintiff. | § § § | |
| vs. | § § | |
| CRIDER AMERICAS SOLAR, LLC and DSCH CAPITAL PARTNERS, LLC d/b/a FAR WEST CAPITAL | § § § § | |
| Third-Party Defendants _____ | § § | |

ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

Before the Court is a Motion to Transfer Venue (Dkt. # 63) filed by Defendant Hypower, Inc. ("Defendant" or "Hypower"). Pursuant to Local Rule 7(h), the Court finds this matter suitable for disposition without a hearing. For the reasons that follow, the Court **GRANTS** Defendant's Motion to Transfer Venue.

1

BACKGROUND

I.   The Present Action

The instant lawsuit arises out of work performed on the Overton Brooks Veterans Administration Medical Center (the "Overton-Brooks Project" or the "Project") in Shreveport, Louisiana in 2013 and early 2014.  ("Compl.," Dkt. # 1 ¶¶ 12–19.)  Hypower is a general contractor in the solar power industry.  (Id. ¶ 10.)  In April 2013, Hypower and Third-Party Defendant Crider Americas Solar, LLC ("Crider") entered into a blanket Subcontract Agreement, which was intended to govern the terms of any future projects between the parties.  (Id.)  In August of that year, Hypower and Crider executed a Scope of Work and Unit Prices Addendum to that agreement, in which Crider agreed to provide design, manufacturing, engineering, and installation services related to solar carport structures for the Overton-Brooks Project.  (Id.)

Plaintiff DSCH Capital Partners, LLC d/b/a Far West Capital ("Plaintiff" or "Far West") is a company that provides working capital funds to companies primarily through accounts receivable factoring.[1]  (Id. ¶ 8.)  In September 2011, Far West entered into an accounts receivable purchasing

---

[1] According to Plaintiff, "Factoring is the business of buying accounts receivable at a discount—a discount provided because the factor (the party purchasing the receivables) assumes the risk of delay in collection.  Factoring is a form of non-traditional lending, common among subcontractors in the construction industry who may not qualify for traditional bank loans."  (Dkt. # 65 at 2 n.1.)

2

agreement (the "Purchasing Agreement") with Crider to provide Crider with working capital funds through the sale of Crider's accounts to Far West.  (Id.)  Pursuant to the Purchasing Agreement, Far West would purchase Crider's accounts receivable and, upon the sale and assignment of an account, would advance funds to Crider.  (Id.)  Thereafter, Far West would become the sole and absolute owner of said account.  (Id.)

On October 4, 2013, Far West sent a letter to Hypower notifying Hypower that, because of the Purchasing Agreement between Far West and Crider, all payments from Hypower to Crider were to be made to Far West.  (Id. ¶ 11.)  Crider began work on the Overton-Brooks Project in September 2013 and began to generate payment applications with associated invoices for work done on the Project.  (Id. ¶ 14.)  After verifying with Hypower the validity and accuracy of two invoices produced by Crider and issued to Hypower for work and services from September 2013 to November 2013, Far West purchased the accounts and payment rights represented by the invoices.  (Id. ¶¶ 16–17.)  Far West alleges that Hypower refused to pay any portion of those invoices and, on January 16, 2014, attempted to terminate the subcontract.  (Id. ¶¶ 19–20.)

On January 27, 2014, Far West brought suit against Hypower.  (Compl., Ex. 1 at 1.)  On April 22, 2014, Hypower removed the action to this Court, invoking the Court's diversity jurisdiction.  (Id. at 2.)  On May 6, 2014,

3

Hypower filed a third-party complaint, suing Crider as a Third-Party Defendant. (Dkt. # 6.)

Far West amended its complaint on August 19, 2014. (Dkt. # 16.) The amended complaint alleges breach of contract, fraud, negligent misrepresentation, and promissory estoppel claims against Hypower.[2] (Id.) Hypower amended its third-party complaint on October 30, 2014. (Dkt. # 38.) The amended third-party complaint alleges breach of contract, indemnity, and Deceptive Trade Practices Act claims against Crider and Far West. (Id.) Both Far West and Hypower seek damages, attorney's fees, and costs. (Dkts. ## 15, 38.)

Hypower filed the instant Motion to Transfer Venue on March 11, 2015. ("Mot.," Dkt. # 63.) Far West filed its Response on March 18, 2015 ("Resp.," Dkt. # 65), and Hypower filed its Reply on March 25, 2015 ("Reply," Dkt. # 68.)

II.     The Related Action

On January 14, 2015, John Paquin d/b/a Armadillo Construction ("Paquin"), one of Crider's second-tier subcontractors on the Overton-Brooks Project, sued Hypower's surety, Insurance Company of the State of Pennsylvania (the "Surety"), for alleged nonpayments related to its work on the Overton-Brooks

---

[2] The amended complaint also alleged some of these claims against former Defendant Josh Kuphal, who was dismissed from the lawsuit on December 9, 2014 (Dkt. # 55).

4

Project in the United States District Court for the Western District of Louisiana, Shreveport Division (the "Miller Act Suit").  (Mot. at 2 (citing Civil Action No. 5:15-CV-00081).)  Paquin's suit was brought under the Miller Act, which mandates that venue lie in Shreveport, the district and division where the project is located.  (Id.)  The suit seeks damages in the amount of $130,000 for the labor, materials, and services Paquin provided to Crider for the Overton-Brooks Project.  Plaintiff's Original Complaint, Paquin v. Ins. Co. of Penn., No. 5:15-CV-81, Dkt. # 1 (W.D. La. Jan. 14, 2015).

On April 1, 2015, the Surety, on behalf of Hypower, filed a third-party complaint against Crider and Far West, which alleges the following claims against Crider and Far West: breach of contract for failing to complete the work in a timely manner and for failing to perform the work in accordance with the subcontract; indemnity from Crider for the funds demanded in the suit before this Court because Crider breached the subcontract and for the funds demanded by Paquin based on the terms of the indemnity agreement; fraud for representing that it was performing work on time and in compliance with the subcontract; and fraud for nondisclosure that Crider was selling its invoices and accounts to Far West.  Third-Party Complaint, Paquin v. Ins. Co. of Penn., No. 5:15-CV-81, Dkt. # 16 (W.D. La. Apr. 1, 2015).  The third-party complaint also alleges counterclaims against Paquin.  (Id.)

5

## LEGAL STANDARD

For the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought, or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal quotation marks omitted). The party moving for transfer carries the burden of showing good cause. See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53, 56 (5th Cir. 1963); see also In re Volkswagen of Am., Inc., 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "Volkswagen II") ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." Volkswagen II, 545 F.3d at 312. If this requirement is met, "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." Action Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337,

340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "Volkswagen I") (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." Id.

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. Volkswagen II, 545 F.3d at 314 n.10, 315 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." Id. at 315.

DISCUSSION

Hypower moves for this case to be transferred to the Shreveport Division of the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a), arguing that Far West's claims against Hypower are entwined with the Miller Act Suit, and the § 1404(a) factors warrant transferring the case to Shreveport so that it can be consolidated with the Miller Act Suit.[3]  (Mot. at 4–5.)  Plaintiff counters that the factors weigh against transferring the case, principally because the majority of the sources of proof and witnesses are located in the Western District of Texas.  (Resp. at 5–7.)

Neither party disputes that the case could have originally been filed in the Shreveport Division of the Western District of Louisiana, where the Overton-Brooks Project is located.  See 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.").  Accordingly, the Court analyzes the private and public interest factors relevant to the transfer decision.

---

[3] Hypower has not yet moved to consolidate the cases: "As to the issue of consolidation, Hypower believes the two cases should be consolidated.  However, the cases are currently pending in different judicial districts and Hypower will reserve its right to file a motion to consolidate pending the outcome of the current Motion to Transfer Venue."  (Reply at 3.)

I.      <u>Private Interest Factors</u>

    A.      <u>Practical Considerations Related to Judicial Economy</u>

Although Hypower does not frame its argument as such, the crux of its motion—that the Miller Act Suit involves substantially similar claims that cannot be transferred out of the Western District of Louisiana—concerns practical problems related to judicial economy.  See <u>In re Volkswagen of Am., Inc.</u>, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (hereinafter "<u>Volkswagen III</u>") ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when considering whether a transfer is in the interest of justice.").  Hypower contends that the issues in this case concern the defective work performed by Crider and Paquin, the scope of repairs, the scope of work performed after Crider's termination, and the related costs incurred by Hypower, all of which overlap with the Miller Act Suit.  (Reply at 2–3.)

The Court agrees.  The claims alleged in Hypower's third-party complaint against Crider and Far West duplicate much of what will be litigated in the instant case.  As the Northern District of Texas has explained:

> In general, duplicate litigation is neither convenient for parties nor witnesses.  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  To a lesser extent, the same can be said about allowing two cases involving essentially the same issues to proceed simultaneously in different districts.

Rodriguez v. Creative Concepts Inc., No. 3:12-CV-2978-P, 2013 WL 2370569, at *4 (N.D. Tex. May 30, 2013) (internal citations omitted) (quoting Cont'l Grain Co. v. The FBL–585, 364 U.S. 19, 26 (1960)).

Given that venue in Shreveport is mandatory for the Miller Act Suit, practical considerations of judicial efficiency weigh in favor of transfer to the Western District of Louisiana. See Xtreme Indus., LLC v. Gulf Copper & Mfg. Corp., No. CIV. A. H-10-2488, 2010 WL 4962967, at *7 (S.D. Tex. Dec. 1, 2010) (finding that the practical problems factor weighed in favor of transfer to Louisiana where the plaintiff claimed it was owed money on a subcontract, but where counterclaims in the suit were offered as proofs of claim against the plaintiff in a separate Chapter 7 Louisiana bankruptcy suit); Perkins v. Falcon Prods., Inc., No. CIV. A. 93-3626, 1994 WL 25524, at *2 (E.D. La. Jan. 21, 1994) (finding that the interests of justice weighed in favor of litigation in a single forum because "the defendants may have to defend the same issues arising out of the same factual circumstance, with the same evidence and the same witnesses concurrently in two separate (if close) forums"); Baroid Drilling Fluids, Inc. v. Transp. Hellenic, Inc., 1993 WL 293279, at *4 (E.D. La. July 23, 1993) (finding transfer warranted because there was already a case pending in New York involving "the same nucleus of operative facts" and which would require the same witnesses and evidence).

B.     Sources of Proof

Hypower contends that the sources of proof will be more easily accessible in Shreveport, since the Overton-Brooks Project is in Shreveport and the claims are entwined with the Miller Act Suit, which is being litigated in Shreveport. (Mot. at 4.) Far West counters that the parties have produced voluminous documents in discovery which are available from any location and the witnesses who will testify about the relationship between Hypower and Far West are Hypower's corporate officers in Fort Lauderdale, Florida, and Far West and Crider's corporate officers in Austin, Texas. (Response at 5.) Far West concludes that, regardless, since discovery is largely complete, a transfer would not yield a benefit with regard to sources of proof. (Id.) Hypower disagrees with Far West's characterization of discovery, conceding that the parties have completed one deposition and the exchange of documents, but arguing that at least four depositions are being scheduled and subpoenas to third parties are still being served. (Reply at 2.)

Given that document discovery has largely concluded, Hypower has not shown that the Western District of Louisiana would clearly have easier access to proof than the Western District of Texas in terms of documentary evidence. Accordingly, this factor weighs against transfer.

11

C.     Availability, Convenience, and Cost of Obtaining Key Witnesses

Far West argues that its representatives and employees are located in Austin and that Hypower's corporate representatives and employee witnesses are based out of Florida and therefore need to travel regardless of whether this litigation proceeds in Louisiana or Texas. (Resp. at 5.) Hypower counters that because the majority of parties and witnesses will need to participate in both the current case and the Shreveport litigation, transfer will reduce overall time and financial costs to witnesses and corporate representatives. (Mot. at 4; Reply at 2.)

Although courts can consider the availability and cost of both party and non-party witnesses, "[i]t is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." State St. Capital Corp. v. Dente, 855 F. Supp. 192, 198 (S.D. Tex. 1994); accord Vargas v. Seamar Divers Int'l, LLC, No. 2:10-CV-178-TJW, 2011 WL 1980001, at *5 (E.D. Tex. May 20, 2011) (concluding that the court in Volkswagen II intended that this factor address non-party witnesses); see also 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3851 (4th ed. 2015). This is because the party witnesses presumably appear willingly on behalf of their party-employer, unlike third-parties who are only subject to subpoenas within a 100-mile radius.

See Fed. R. Civ. P. 45(c); Vargas, 2011 WL 1980001, at *5; Wright & Miller, Federal Practice and Procedure § 3851.

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." Volkswagen I, 371 F.3d at 204–05. Here, since the distance between the Western District of Texas and Western District of Louisiana is over 100 miles, the Court must consider the relative inconvenience for witnesses of travel to Shreveport versus Austin.

According to Far West, "every individual identified on Hypower's proposed trial witness list is either an employee of Hypower or Far West or otherwise resides in Texas or Florida." (Response at 5–6.) Because Far West's headquarters are located in Austin, Texas, the current venue is clearly more convenient for those employee-witnesses. Since Hypower has made no argument about the relative ease of traveling from Fort Lauderdale, Florida to Shreveport versus Fort Lauderdale to Austin, the Court finds the relative convenience for Hypower's employee-witnesses unchanged.[4] Without more specific address information as to the third parties in Texas and Florida already identified on the witness list, the Court cannot determine which venue is more convenient.

---

[4] Fort Lauderdale is 1,101 miles from Shreveport and 1,329 miles from Austin.

According to Hypower, many of the following subcontractors will also participate in the instant litigation as witnesses or sources of documentary evidence: five subcontractors in Louisiana, two subcontractors in Oklahoma, one subcontractor in Arkansas, and other third parties in Georgia, Texas, Wisconsin, and Minnesota.  (Reply at 2.)

Because of the wide array of potential witnesses and the breadth of their locations, their physical locations do not sway the court on the relative convenience of the Western District of Louisiana.  However, because "duplicate litigation is neither convenient for parties nor witnesses," Rodriguez, 2013 WL 2370569, at *4, and because many, if not most, of the witnesses will also need to participate in the Miller Act Suit, the witness considerations weigh in favor of transfer.

In light of the foregoing, the Court concludes that the private interest factors weigh in favor of transfer.

II.     Public Interest Factors

   A.     Administrative Difficulties of Court Congestion

Hypower argues that courts in the Western District of Texas, where judges each received an average of 896 filings in 2014, are significantly more congested than the courts in the Western District of Louisiana, where judges each received an average of 475 filings in 2014.  (Mot. at 4.)

Far West counters that transfer of venue would significantly delay the trial date and likely result in duplicative discovery. (Resp. at 6.) Additionally, Far West argues that the instant litigation is ultimately a case concerning communications between two parties, and its incorporation into the Miller Act Suit would make it a tangential part of a cumbersome suit. (Id.) Accordingly, Far West argues that any efficiency gained from transfer to a less congested division would be nullified. (Id.) Hypower contests this characterization of the litigation, arguing that the key issues in this litigation will also be litigated as part of the Miller Act Suit. (Reply at 2–3.)

The purpose of this factor is to favor the venue that can bring the case to trial faster. In re Genentech, Inc., 566 F.3d 1338, 1347 (Fed. Cir. 2009). Although Hypower is correct that the Western District of Louisiana is significantly less congested than the Western District of Texas, the relative progress of the instant litigation as compared to the Miller Act Suit balances the congestion. Accordingly, this factor is neutral.

    B.    <u>Local Interest</u>

Hypower contends that Shreveport has a high local interest in adjudicating the matter, since the case concerns construction on the Overton-Brooks Project, which is located in Shreveport. (Mot. at 5.) Hypower further contends that the Overton-Brooks VA Medical Center is a large component of the

15

local economy of Shreveport, serving more than 37,000 veterans each year, operating with an annual budget of $260 million, and employing 1,500 people. (Id.)  Far West counters that Austin has a local interest in adjudicating the matter because the case is about the rights of Far West—an Austin-based corporation—to recover damages for tortious conduct.  (Resp. at 6.)

Although Far West is correct that the case concerns its rights as an Austin-based party under Texas law, the facts giving rise to its damages concern nonpayments for construction work that was done in Shreveport, Louisiana.  The central fact issues in this case concern whether Hypower breached its Subcontracting Agreement by failing to pay Crider for the work on the Overton-Brooks Project or fraudulently represented its intent to make payments on Crider's invoices for work on the Overton-Brooks Project—payments which would have been routed to Far West by virtue of the Purchasing Agreement.  "When alleged harm by . . . defendants span[s] multiple states, the alleged harmful acts primarily occurred outside of Texas, and those acts have spawned multiple civil actions, there is less of a local interest in having the matter decided in Texas."  Rodriguez, 2013 WL 2370569, at *7.  While there is a local interest in adjudicating the matter in Austin, the local interest in adjudicating the matter in Shreveport is greater.

C.  Familiarity With Applicable Law

Hypower argues that both district courts are within the jurisdiction of the Fifth Circuit Court of Appeals and are competent to apply federal and state law as applicable. (Mot. at 5.) Far West counters that most of the claims in this suit are governed by Texas law, which favors venue in the Western District of Texas. (Resp. at 7.)

In general, courts find that in cases involving state law, federal courts sitting in the state are more familiar with the applicable state law than federal courts sitting in other states. See, e.g., Devon Energy Prod. Co., L.P. v. GlobalSantaFe S. Am., No. H-06-2992, 2007 WL 1341451, at *9 (S.D. Tex. May 4, 2007). Accordingly, this factor weighs against transfer.

D.  Conflict of Laws

Because both parties agree that there is no conflict of law or application of foreign law in this case, this factor is neutral.

III.  Balance of the Factors

With the exception of the familiarity of law and sources of proof factors, all factors weigh in favor of transfer or are neutral. Given the duplicitous nature of the Miller Act Suit and its mandatory venue in Shreveport, the Court finds that the weight of the factors favors transfer. Accordingly, the Court **GRANTS** the Motion.

CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Hypower's Motion to Transfer (Dkt. # 63) and the case is ordered transferred to the United States District Court for the Western District of Louisiana.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, May 7, 2015.

_____
David Alan Ezra
Senior United States Distict Judge